IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

COSMOGONY II, INC.

Involuntary Debtor

CASE NO.  22-01682 (ESL)

CHAPTER  7

OPINION AND ORDER

On August 2, 2022, the Court ordered Glencore, Ltd. ("Glencore" or "Petitioning Creditor") to show cause as to why dismissal or transfer of venue pursuant to Fed. R. Bankr. P. 1014 and 28 U.S.C. §1408 should not be entered (Docket No. 21). Glencore filed its Response to *Order to Show Cause Issued August 2, 2022* (Docket No. 25). The only party that has addressed the Court's concerns is Glencore.

For the reasons stated below, the Court finds that the transfer of venue to the District Court of the Virgin Islands Bankruptcy Division is the appropriate course of action.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

Procedural Background

On June 13, 2022, Glencore filed a Chapter 7 Involuntary petition against Cosmogony II, Inc. (hereinafter referred to as "Cosmogony" or "Involuntary Debtor"). Glencore in the petition listed the Involuntary Debtor's principal place of business as: c/o Office of the Lieutenant Governor of the Virgin Islands, 1131 King Street, Suite 101, Christiansted, St. Croix, USVI 00820. Glencore includes an Attachment A that lists four (4) different addresses which are all in St. Croix, USVI. Regarding line item # 10, "Venue," the petitioning creditor checked the box which states that, "[o]ver the last 180 days before the filing of this bankruptcy, the debtor had a

-1-

domicile, principal place of business, or principal assets in this district longer than any other district." In line item #11 of the petition, "Allegations," Glencore checked the following box which states that, "[t]he debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount." Glencore disclosed its claim in the amount of $134,476.19 for amount past due an owing on an indemnity claim. Also, on June 13, 2022, Glencore filed the *Designation Required under LBR 1003-1* in which it disclosed that it did not know the identity of the alleged debtor's principal operating officer, trustee, or managing general partner, and that pursuant to Title 13 of the United States Virgin Islands Code, V.I. tit. 13 §1112 (2019), the alleged debtor may be served in the Virgin Islands care of the Office of the Lieutenant Governor of the United States Virgin Islands. Moreover, Glencore also disclosed that the alleged Debtor does not appear in the Puerto Rico Electronic Registry for Corporations and Entities, thus an authorized agent or designated resident agent for Cosmogony in Puerto Rico is unknown. (Docket No. 6).

On June 28, 2022, Glencore filed an adversary proceeding against Milton Burt requesting injunctive relief or imposition of stay related to the case captioned <u>Milton A. Burt v. Lockheed Martin Corp., Glencore, Ltd., and Cosmogony II, Inc</u>., No. SX 2021-CV-00 (the "Toxic Dust Action" or "TDA") pending in the Superior Court of the Virgin Islands, Division of St. Croix against Glencore (Adversary Proceeding 22-00044, Docket No. 1). Glencore in the Complaint argues that, "… the relief sought in this action is necessary to avoid immediate and irreparable harm to the Debtor's estate (the "Estate") and to the interests of its creditors, in the form of depletion of the assets of the Estate. Absent a temporary stay of the TDA, until a chapter 7 trustee (the "Trustee") has been appointed in the Debtor's case and had a brief 90-day diligence opportunity thereafter, there would be an irreparably adverse impact on the Estate in the form of rapidly increasing claims against the Estate in liquidated amounts, and corresponding depletion of assets available to other creditors. The irreparable harm is the result of a recent action by the Superior Court to place the TDA on an accelerated timetable. As a creditor of the Estate, Glencore has an interest in ensuring that the interests of the Estate and best interests of all of its creditors,

including plaintiff in the TDA (and many other plaintiffs, in other actions proceeding against the Involuntary Debtor) are appropriately protected. Glencore therefore requests that this Court issue a temporary restraining order staying the continued prosecution of the TDA until 90 days after the Trustee has been appointed. The requested respite will provide a short but reasonable opportunity for the Trustee to become familiar with this matter, investigate and determine the Estate's assets, and formulate and pursue a course of action that will best protect the interests of the Estate and its creditors." (Adversary Proceeding 22-00044, Docket No. 1, pg. 2). In the Complaint, Glencore discloses that the same day it filed the involuntary petition against Cosmogony, it filed a notice in the TDA and several other V.I. cases informing the state court, "that Cosmogony was in bankruptcy giving rise to the automatic stay." On June 16, 2022, the Superior Court issued an Order staying the TDA and various other V.I. cases, but only as to the Involuntary Debtor. In the Complaint, Glencore contends that, "[a]bsent a stay, and without a Trustee in place, the Estate will be irreparably harmed if the TDA is allowed to proceed against Glencore. Because the TDA is on an accelerated track headed for trial in November, very substantial fees and expenses will be incurred in the immediate future as Glencore undertakes costly fact and expert discovery and motion practice in the TDA, very little of which has been done as of this date. As a result of the Indemnity, those fees and expenses will become liquidated obligations of the Estate, and will grow dramatically and thereby decrease the claim pool competing for the Estate's limited assets, to the detriment of the Estate and all other creditors." (Adversary Proceeding 22-00044, Docket No. 1, pg. 5). Glencore also states in the Complaint that, "… as represented by Mr. Burt's counsel as recently as January 9, 2022, the Debtor may have numerous additional insurance policies." (Adversary Proceeding 22-00044, Docket No. 1, pg. 17, Exhibit 6, pg. 28).

On August 2, 2022, the Court ordered Glencore to show cause as to why the dismissal or transfer of venue pursuant to Fed. R. Bankr. P. 1014 and 28 U.S.C. §1408 should not be entered. The Court instructed the petitioning creditor to answer the following questions:

"1. Noncompliance with Fed. R. Bankr. P. 1010 for failure to serve summons. The Involuntary Chapter 7 petition was filed on June 13, 2022. Summons were issued by the

Clerk on the same date (Docket No. 2). As of this date, there is no certificate by the petitioning creditor of having served the summons. The Notice to parties in interest in docket 13 does not meet the requirement in Fed. R. Bankr. P. 1010.

2. Is the alleged involuntary debtor corporation an existing legal entity? The allegations in the complaint cast doubt about its actual existence. This is a two-pronged problem. Can an involuntary petition be filed against a non-existing corporation? How do you serve summons on a non-existing corporation?

3. The allegations in the complaint as to the number of plaintiffs against the codefendants, which include the alleged involuntary debtor corporation, exceed 12. Thus, the facts place into question whether the involuntary petition must be filed by three or more creditors. 11 U.S.C §303(b)(1); In re Edgar Reyes-Colón, 922 F.3d 13 (1st Cir. 2019).

4. Is venue under 28 U.S.C. § 1408 proper? Paragraph 10 (Venue) of the Involuntary Petition states that the debtor over the last 180 days before the filing of the petition had a domicile, principal place of business, or principal assets in this district (Puerto Rico) longer than in any other district. The allegations in the complaint state that Cosmogony basically ceased to exist in 2017 and that the one probable asset is an insurance policy issued by a Puerto Rico corporation in 1991. The court notes that the Insurance Policy Certificate discloses that the policy expiration date is July 1, 1992. Moreover, Glencore alleges that it has no knowledge as to whether the Policy is still in effect, whether it has been assumed by another insurance carrier, or whether it has been exhausted. Glencore also has no knowledge of other insurance policies, or of any other assets or potential assets that may be property of the estate. (Adversary Proc. 22-00044, Docket No. 1, pgs. 12-13). Thus, the facts in the complaint do not support the venue statement in the involuntary petition.

5. What is the purpose of filing this involuntary chapter 7 petition when the only apparent asset is an expired insurance policy? There are no assets to liquidate. Is it for the benefit of the petitioning creditor, that in the adversary proceeding prays for the extension of the automatic stay provisions for its own benefit?" (Docket No. 21).

On August 16, 2022, Glencore filed its amended *Response to Order to Show Cause Issued August 2, 2022.* (Docket Nos. 24 & 25).

Issue

The issue the Court has raised *sua sponte* is whether dismissal or transfer of venue pursuant to Fed. R. Bankr. P. 1014 and 28 U.S.C. §1408 should be entered based on the questions raised by the court.

<u>Glencore's position</u>

Glencore explains that Cosmogony has failed to maintain a registered agent for service of process. Thus, Glencore exercised its due diligence in attempting, without success, to locate such agent, also delivered copies of the summons and the Involuntary Petition via certified mail to every known physical address associated with the Involuntary Debtor and its corporate predecessors. Each such mailing was returned to sender by the U.S. Postal Service. Thereafter, Glencore served the Office of the Lieutenant Governor of the Virgin Islands (the "Lieutenant Governor"). Fed. R. Bankr. P. 7004 incorporates by reference the methods of service in Fed. R. Civ. P. 4(e)- (j). Fed. R. Civ. P. 4(h) which governs service on corporations, permits a party to serve a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1) permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Virgin Islands Law permits service upon the Lieutenant Governor where a party cannot by due diligence serve a corporation through an individual authorized to receive it. See 12 V.I.C. §348 ("In a case legal process against a corporation cannot by due diligence be served upon any person authorized to receive it, such process, including the complaint, may be served in duplicate upon the Lieutenant Governor, which service shall be effectual for all purposes of law."). Glencore contends that it has complied with the service requirements of Fed. R. Bankr. P. 1010 by delivering the summons and copies of the Involuntary Petition to the Lieutenant Governor (Docket No. 22). Service upon the Lieutenant Governor is consistent with both the Federal Bankruptcy Code and Virgin Islands Law, made applicable through Fed. R. Bankr. P. 7004(a).  Glencore has effectuated service under both Rules 7004(a) and 7004(b).

Under Virgin Islands law, a corporation exists until it has been formally dissolved. Thus, the corporation may be sued, served with process and defaulted. Under Virgin Islands law, a corporation may be dissolved by its shareholders and directors pursuant to 13 V.I.C. §283, through an action for dissolution under 13 V.I.C. §288, or by the Lieutenant Governor for failure

to pay franchise taxes pursuant to 13 V.I.C. §533(c)(1). Moreover, under 13 V.I.C. §285, a dissolved corporation can be sued in its own name for up to three years from the date of dissolution. Notwithstanding, Cosmogony's failure to pay franchise taxes since the year 2017, the Lieutenant Governor has not taken the required statutory steps to dissolve Cosmogony.

Glencore further explains that the Virgin Islands Courts have found Cosmogony to be a viable defendant, and given that it is a Virgin Islands corporation, Cosmogony's citizenship precludes diversity. Glencore removed a number of cases from the Superior Court to the U.S. District Court on the grounds that Cosmogony is a defunct shell entity, and therefore should not be considered a non-diverse party that defeats diversity jurisdiction. The U.S. District Court has found that Cosmogony is a viable non-diverse party for jurisdictional purposes and has remanded the cases to the state court. See, e.g., Brooks v. Glencore Ltd., No. 2021-0251, 2022 U.S. Dist. Lexis 35627, at *12 n.6 (D.V.I. 2022) (remanding for lack of diversity where "there is no indication that Cosmogony dissolved the corporation or wound up its corporate affairs in accordance with applicable law"); Mathurin v. Hess Corp., No. 2021-0176, 2022 U.S. Dist. Lexis 59824, at *19 (D.V.I. 2022) (remanding for lack of diversity in the absence of evidence "that the corporation has no accounts, property or insurance assets which Plaintiff could pursue.").

Glencore contends that the involuntary petition complies with 11 U.S.C. §303(b)(2) because it has fewer than twelve (12) creditors holding qualified claims. The claims for bodily injury in the V.I. cases filed by attorney Pate against Cosmogony are not qualified claims pursuant to 11 U.S.C. §303(b)(2) because the same are pending litigation and are contingent and subject to bona fide dispute. Glencore holds a qualifying claim against Cosmogony under 11 U.S.C. §303(b). Glencore clarifies that the only other known holder of a qualified claim under section 303(b)(2) is the Office of the Lieutenant Governor of the Virgin Islands which is owed unpaid franchise taxes.

Glencore argues that Puerto Rico is the most appropriate venue for the Involuntary Debtor because the Involuntary Debtor's principal asset which is the insurance policy, "…was represented by Mr. Pate as being located in this district. Moreover, given the Puerto Rico- based

issuer of the million-dollar policy and the date thereof, the Involuntary Debtor's principal asset has been located in this district since 1991, far more than the 180 days preceding the petition, as required under 28 U.S.C. §1408(1)." Glencore contends that the District of Puerto Rico is the proper venue for this involuntary petition because the available evidence indicates that the estate's principal asset is located in Puerto Rico. The million-dollar policy is Cosmogony's principal asset, and that is sufficient to establish venue in this district. Glencore argues that one of the most significant factors is the location of the debtor's principal asset, particularly when, as in the instant case, investigation into that asset is necessary. The petitioning creditor also argues that, "[t]he interests of the creditors are also best served by the case remaining in this district. A Trustee based in Puerto Rico is much more likely than a Trustee based elsewhere (including the Virgin Islands) to have the facility and professional contacts in Puerto Rico to properly and effectively investigate, for the benefits of all creditors, the existence of the million-dollar policy issued in Puerto Rico, and to discover any of the other insurance policies that, according to Mr. Pate are either known or strongly believed to exist." Glencore's position is that the appointment of a trustee is essential because the trustee can inquire Mr. Pate to disclose everything he knows about the assets of the Involuntary Debtor, including the facts and evidence that underlie his representations to the U.S. District Court.

Applicable Law & Analysis

The proper venue for the commencement of a case under title 11 is governed by 28 U.S.C. §1408 which provides,

"[e]xcept as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is a pending a case under title 11 concerning such person's affiliate, general partner, or partnership." 28 U.S.C. §1408.

28 U.S.C. §1412 provides: "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. §1412.

Fed. R. Bankr. P. 1014(a) provides in pertinent part:

"(1) *Cases Filed in Proper District*. If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

(2) *Cases Filed in Improper District*. If a petition is filed in an improper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(1) & 2.

A party in interest may object to the improper venue or the court may raise the issue on its own when a case is commenced in an improper district. See Richard Levin & Henry J. Sommer, 9 Collier on Bankruptcy, ¶1014.03[1] (16th ed. 2022).  "The decision of whether to transfer venue is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness." In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (citing cases); In re Patriot Coal Corp., 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012). 28 U.S.C. §1412 and Fed. R. Bankr. P. 1014(a) are "written in the disjunctive, making transfer of venue appropriate either in the interest of justice or for the convenience of the parties, and that this statutory provision creates two distinct analytical bases upon which transfer of venue may be grounded." In re Hermitage Inn Real Estate Holding Co., LLC, 2019 Bankr. Lexis 1862, *9 (Bankr. D. Vt. 2019) (citing In re Caesars Entm't Operating Co., 2015 Bankr. Lexis 314, at **161-7 (Bankr. D. Del. 2015)). Notwithstanding, the two tests overlap considerably. In re Finley, Kumble, Wagner, Heine,

Underberg, Manley, Myerson & Casey, 149 B.R. 365, 368 (Bankr. S.D.N.Y. 1993) (citing In re Portieff Development Corp., 118 Bankr. 184, 192 (Bankr. E.D.N.Y. 1990)) ("Though the standard is stated in the disjunctive, there is considerable overlap between the two. However, while it is true that 'what serves the convenience of the parties will also serve the interest of justice*** the contrary is not necessarily true'"). The same standard applies to transfer an improperly filed case and the transfer of a properly filed case.

The venue provisions under 28 U.S.C. §1408 refer to the domicile, residence, principal place of business or place of principal assets in the United States. "Sections 1408 and 1410 and Federal Rule of Bankruptcy Procedure 1014 recognize that the debtor's principal place of business may not be the location of its principal assets." Richard Levin & Henry J. Sommer, 9 Collier on Bankruptcy, ¶1014.02[1] (16th ed. 2022).

In the instant case, Cosmogony is a corporation that is organized and existing under the laws of the U.S. Virgin Islands. Pursuant to the May 20, 2021, affidavit of Denise Johannes, Director of the Division of Corporation and Trademarks of the Office of the Lieutenant Governor of the U.S. Virgin Islands, Cosmogony was the result of a corporate name change of U&W Industrial Supply, Inc. which was issued on December 30, 1999. (Docket No. 24-4, Exhibit 3, pg. 10). The petitioning creditor contends that the Involuntary Debtor's principal asset is a 1991 "occurrence policy" issued by General Accident Insurance Policy of Puerto Rico, Ltd. to General Engineering Corporation of Kingshill, St. Croix, U.S. Virgin Islands. Glencore understands that General Engineering Corporation ("GEC") is Cosmogony's corporate predecessor. Pursuant to the affidavit of the Director of the Division of Corporation and Trademarks, U&W Industrial Supply, Inc. filed an agreement and plan of merger with the office on March 19, 1998, merging General Engineering Corporation with and into it, and a certificate of merger was issued on June 4, 1998. (Docket No. 24-4, Exhibit 3, pg. 10) It is Glencore's understanding that General Accident Insurance Policy of Puerto Rico, Ltd. is no longer in operation. Glencore discloses that with the passage of time and the absorption of General Accident Insurance Company of Puerto Rico Ltd. and its assets and liabilities into other entities, has obscured its ability to determine the

number of policies issued and their coverage amounts, and which entity or entities acquired the assets and liabilities of General Accident Insurance Company of Puerto Rico Ltd. (Docket No. 24, pg. 6). Fermín M. Contreras Gómez in his expert declaration dated August 12, 2022, disclosed that he was requested to assume various facts, one of which is that Glencore does not have a copy of the insurance policy, or any riders or endorsements thereto. Mr. Contreras recommends pursuing the whereabouts of this insurance policy, including identification of successor parties that may be currently responsible for providing coverage under the policy. There are multiple local resources and mechanisms available under the Insurance Code of Puerto Rico, the pertinent Regulations, and Normative letters that can help in this process. (Docket No. 24-20).

The petitioning creditor discloses that this involuntary bankruptcy arises from a series of approximately fifty-two (52) lawsuits filed in the courts of the U.S. Virgin Islands by several attorneys, including attorney Russell Pate during the period 2020-2022 against various defendants which include Lockheed Martin Corp., Glencore Ltd., Cosmogony II, LLC, Hess Corporation, Hess Oil New York and Virgin Islands Industrial Maintenance Corp., which are currently pending in the Superior Court of the Virgin Islands, Division of St. Croix. (Docket No. 24-3, Exhibit A). The allegations against GEC are that it performed services at the Alumina Refinery in St. Croix and was negligent in ensuring that workers at the Alumina Refinery had a safe work environment. The plaintiffs allege that GEC and Glencore are responsible for emissions of bauxite dust and asbestos, among other toxic substances, which were inhaled by workers at the Alumina Refinery allegedly causing lung injury to the workers.

Glencore states that it filed the Involuntary Petition in this district, "on the basis of express written representations made by Mr. Pate, to the U.S. District Court for the Virgin Islands in St. Croix regarding the existence and situs of Cosmogony's assets, which include a substantial asset or assets in Puerto Rico." (Docket No. 25, pg. 8). Glencore in its response requests the Court, "…to enter an Order for relief authorizing a Trustee to locate and marshal assets, including the million-dollar policy and any other policies that are subject of Mr. Pate's representations to the

U.S. District Court. A Trustee would be able to ascertain and confirm the existence and location of any policies, to the benefit of all Creditors." (Docket No. 25, pg. 19).

The Court notes that in adversary proceeding 22-00044, Glencore filed an *Opposition to Milton Burt's Motion to Dismiss Complaint for Injunctive Relief* in which it included as an exhibit an email dated September 22, 2021, from attorney Russel Pate to various attorneys inquiring as to whether any one of them had been retained as Cosmogony's counsel. Attorney Pate in his email states the following, "If none of you are counsel, we will be reaching out directly to the insurers that we believe insured GEC and Cosmogony, including: 1. The Swiss Re Group. 2. First Specialty Insurance Corporation. 3. Risk Placement Services, Inc. 4. Westport Insurance Company. 5. Fulcro Insurance, and 6. a few other customary insurers for the Virgin Islands. Further, we will likely issue subpoenas to the insurers requesting the claim file and all correspondence. Additionally, we may proceed with filing a direct action, which we believe permissible under a Bank Analysis." (Adv. Proceeding 22-00044, Docket No. 14-5, Exhibit 4, pg. 28).  The court further notes that attorney Pate does not include General Accident Insurance Company of Puerto Rico Ltd. amongst the insurance companies listed.

Cosmogony is a corporation that is organized and existing under the laws of the U.S. Virgin Islands and has conducted its business operations in the U.S. Virgin Islands. A corporation's domicile is generally held to be its state of incorporation. In re Dunmore Homes, Inc., 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (citing In re B.L. of Miami Inc., 294 B.R. 325, 328 (Bankr. D. Nev. 2003)). Thus, the court finds that Cosmogony's domicile, residence and principal place of business has always been located in the U.S. Virgin Islands. Cosmogony's principal asset according to Glencore is a 1991 insurance policy that was issued by General Accident Insurance Company of Puerto Rico Ltd. which at some point ceased to exist and thus, its assets and liabilities were acquired by other entities at some point in time. Glencore admits that its assertion regarding Cosmogony's principal asset is based upon representations of a third party, namely, attorney Russel Pate which, in turn, are substantiated by a declaration of attorney Eliot Lauer, counsel for Glencore. The court notes that attorney Eliot Lauer's declaration is not

signed. (Docket No. 24-1). The court also notes that also based on representations of attorney Russel Pate made in an email there are several insurance companies that insured both GEC and Cosmogony and Mr. Pate was in the process of issuing subpoenas to the same so that they may proceed with a direct action against the insurance companies, which makes the Court question the accuracy of Glencore's allegation that the only principal asset of Cosmogony is the 1991 life insurance policy that was issued by General Accident Insurance Company of Puerto Rico Ltd. (Adv. Proceeding 22-00044, Docket No. 14-5, Exhibit 4, pg. 28). No information has been provided to the court regarding the status of the direct actions against the other insurance companies in state court. Glencore has not been able to inform the court the name of the corporation and the "location" of the insurance company that acquired this insurance policy from General Accident Insurance of Puerto Rico Ltd. Moreover, the Petitioning Creditor in its complaint for injunctive relief asserts that, "Glencore does not know whether the Policy remains extant, or whether there are other insurance policies in additional amounts for the Debtor's benefit, whether in Puerto Rico or elsewhere, that may supplement the Estate's assets. It will be necessary for the Trustee to investigate the Policy and any other potential assets, and to determine what value, if any, remains for the benefit of creditors, and how best to manage the TDA and other V.I. cases." (Adv. Proceeding 22-00044, Docket No. 1, pg. 4).

At this juncture, the court finds that the location of the principal assets of Cosmogony which allegedly consist of several liability insurance policies, remains unknown at the time. Therefore, the Court finds that Glencore filed Cosmogony's involuntary chapter 7 in an improper district.

The same analysis applies under 28 U.S.C. §1412 and Fed. R. Bankr. P. 1014(a)(1) and (a)(2) to transfer an improperly filed case and for the transfer of a properly filed case; namely if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

*Interest of justice*

The interest of justice analytical basis for determining transfer of venue pursuant to 28 U.S.C. §1412 and Fed. R. Bankr. P. 1014(a) considers the following factors: (1) whether transfer would promote the economic and efficient administration of the estate; (2) whether the interests of judicial economy would be served by the transfer; (3) whether either forum has an interest in having the controversy decided within its borders; (4) whether the parties would be able to receive a fair trial in each of possible venues; (5) whether the enforceability of any judgment would be affected by the transfer; and (6) whether the plaintiff's original choice of forum should be disturbed. In re Dunmore Homes, Inc., 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008) (citing Enron Corp. v. Arora (In re Enron Corp.), 317 B.R. 629, 638-39 (Bankr. S.D.N.Y. 2004)). The interest of justice basis has been characterized as a broad and flexible standard based on the facts and circumstances of each case. In re Enron, 274 B.R. at 343 (citing Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp., 896 F. 2d 1384, 1391) (2d Cir. 1990)). "This matter ultimately boils down to whether the Court will defer to the Debtor's or Petitioning Creditor's judgment with respect to choice of venue." In re Caesars Entm't Operating Co., 2015 Bankr. Lexis 314, *23-24. In addition to these factors, courts also consider the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so. In re B.L. of Miami, 294 B.R. at 334. "Courts have consistently commented that the debtor's choice of forum is entitled to a certain level of deference if venue is proper under section 1408." In re Caesars Entm't Operating Co., 2015 Bankr. Lexis 314, *24 (citing In re Enron, 274 B.R. at 342) ("A debtor's choice of forum is entitled to great weight if venue is proper.") (Citations omitted)).

*Convenience of the parties*

When discerning the convenience of the parties for purposes of transfer of venue under 28 U.S.C. §1412 and Fed. R. Bankr. P. 1014(a), the criteria that is employed to determine whether to transfer a case are: (1) the proximity of creditors of every kind to the Court; (2) the proximity

-13-

of the debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic and efficient administration of the estate; and (6) the necessity for ancillary administration if liquidation should result." In re Caears Entm't Operating Co., 2015 Bankr. Lexis 314, at *19 (citing In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1247 (5th Cir. 1979) ("CORCO")); Richard Levin & Henry J. Sommer, 9 Collier on Bankruptcy, ¶1014.02[2][a] (16th ed. 2022). The consideration given the most weight is the economic and efficient administration of the estate. In re Enron, 274 B.R. at 343. "Most cases do not consider liquidation because it is illogical to focus on liquidation contingencies when the goal of the bankruptcy is reorganization." In re Dunmore Homes, Inc., 380 B.R. at 672 (citing CORCO, 596 F. 2d at 1248; In re Enron, 274 B.R. at 349; In re B.L. of Miami, 294 B.R. at 333.)).

The petitioning creditor in the instant case filed a chapter 7 involuntary petition, meaning that the objective is liquidation, not reorganization. From the information Glencore has provided to this Court, it seems that Cosmogony has not been in business or operating for several years. Also, pursuant to the information that has been provided, Cosmogony's principal assets are allegedly several liability insurance policies that were issued in the 1990's. Liability insurance policies' primary purpose is to satisfy the claims that arise from its coverage, namely claims of bodily injury suffered by workers in the workplace.

This Court finds that in the instant case, all the potential claimants of the Involuntary Debtor and the liability insurance policies that may be associated with it and that may be entitled to recover from their contingent claims reside in the U.S. Virgin Islands. The claims are contingent, given that the plaintiffs in the state court action (U.S. Virgin Islands) must prevail in proving the employer's negligence and the nexus of the same to the workers' bodily injuries caused by the toxic dust action. Moreover, all the plaintiffs of the toxic dust action filed their respective lawsuits in the Superior Court of the Virgin Islands, Division of St. Croix. The court concludes that the location of the potential contingent claimants/creditors favors the transfer to the U.S. Virgin Islands district. Moreover, the Office of the Lieutenant Governor of the Virgin

Islands is another creditor which is owed unpaid franchise taxes and is also located in the U.S. Virgin Islands.

As explained previously, the Involuntary Debtor's domicile, residence and principal place of business has always been in the U.S. Virgin Islands. Thus, Cosmogony technically resides in the U.S. Virgin Islands. This Court finds that if there is any need to inspect Cosmogony's books and records (or computer records) and make inquiries to the last known officers and directors, they most likely will be in the U.S. Virgin Islands. The location of Cosmogony's principal assets which allegedly consist of various insurance policies is currently unknown. Thus, this Court concludes that a venue transfer favors the proximity of Cosmogony to the District Court of the Virgin Islands Bankruptcy Division.

As to the proximity of the witnesses necessary to the administration of the estate, this Court finds that based on the Petitioning Creditor's representations the assets of the estate will only consist of the various liability insurance policies. At this early stage it is difficult to assess but it does not seem that there will be many witnesses in this Chapter 7 Involuntary case. However, there will probably be counsel representing the interests of the different insurance companies that in the past issued liability insurance policies to Cosmogony and/or its predecessor. The Court notes that also based on representations of attorney Russel Pate made in an email there are several insurance companies that insured both GEC and Cosmogony and Mr. Pate was in the process of issuing subpoenas to the same so that they may proceed with a direct action against the insurance companies. (Adv. Proceeding 22-00044, Docket No. 14-5, Exhibit 4, pg. 28). The Court concludes that if any professionals or expert witnesses need to be employed by the bankruptcy estate, it is more convenient to do so in Cosmogony's state of incorporation and where it has conducted its operations since its inception.

As discussed, the location of the estate's assets is currently unknown. As informed by Glencore, Cosmogony's assets will potentially consist of the liability insurance policies once the due diligence process takes place and the supporting documents regarding the insurance policies are found and disclosed. This might require contacting Cosmogony's last known officers and

directors which are most likely located in the U.S. Virgin Islands. This Court understands that Cosmogony ceased its operations in St. Croix and does not own any real estate in the U.S. Virgin Islands. "Additionally, [w]here a debtor's assets consist solely of real property, as with Debtor in this case,' courts have found that 'matters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'" In re Hermitage Inn Real Estate Holding Co., LLC, 2019 Bankr. LEXIS 1862, *35 (citing In re B.L. of Miami, Inc., 294 B.R. 325, 332 (Bankr. D. Nev. 2003) (citing In re Enron Corp., 284 B.R. 376, 392 (Bankr. S.D.N.Y. 2002)); see also; In re Abengoa Bioenergy Biomass of Kansas, LLC, 2016 Bankr. LEXIS 1831, at *21 (Bankr. D. Kan. 2016)) ("In cases with one or few assets, courts have favored sending them to or leaving them in venues where the assets are located.").

The court finds that the economic administration of the estate in this Involuntary Chapter 7 case consists of Cosmogony's potential assets which are comprised solely of the proceeds of liability insurance policies. The Court also concludes that the liability insurance policies may be accompanied by legal issues that may arise if the U.S. Virgin Islands Superior Court finds that Cosmogony and/or its predecessor were negligent, and the insurance policy covers the potential claimants' liability insurance claims. This Court finds that the Chapter 7 Trustee would require counsel to deal with the regulatory and state law issues pertaining to the law of the U.S. Virgin Islands. The Court concludes that the U.S. Virgin Islands would promote the most efficient and economic administration of the case. This factor, under the convenience of the parties' standard, is the same as the first factor under the interest of justice considerations; namely whether transfer would promote the economic and efficient administration of the estate. Moreover, under this prong, the Court also concludes that the judicial economy factor under the interest of justice standard, which considers the different legal issues that may arise in this involuntary chapter 7 case, will most likely require counsel with an expertise in regulatory and state law issues pertaining to the law of the U.S. Virgin Islands. Therefore, it will best serve the interest of judicial economy for these cases to proceed in the U.S. Virgin Islands.

-16-

The last factor under the convenience of the parties' standard is whether the necessity for ancillary administration if liquidation should result. The instant involuntary case is a liquidation case. Therefore, the Court finds that the same analysis applies as the factor that considers the location of the assets because the inquiry then focuses on the location of the debtor's assets. See In re Enron Corp., 274 B.R. 327, 343.

The third prong under the interest of justice standard pertains to the forum with an interest in having the controversy decided within its borders. "This factor starts with the premise that there is value in retaining jurisdiction of a debtor's bankruptcy case in the district within which the outcome of the controversy will have the most significant impact." In re Hermitage Inn Real Estate Holding Co., 2019 Bankr. LEXIS, *51. The Court finds that in the instant case, the Involuntary Debtor no longer has any business operations or real estate assets in the U.S. Virgin Islands. However, the majority of the potential claimants are creditors that reside in the U.S. Virgin Islands and have already filed lawsuits in the Superior Court of the U.S. Virgin Islands, St. Croix division and which may ultimately receive liability insurance proceeds based on the outcome of the state court litigation and the coverage of the liability insurance policies. Therefore, the Court concludes that U.S. Virgin Islands has a greater interest than Puerto Rico.

The Court finds that the fourth and fifth prongs under the interest of justice standard; namely the fair trial and the enforcement of judgments factors do not play a role in the interest of justice analysis regarding transfer of venue in the instant case.

The last prong under the interest of justice standard is debtor's choice of forum, which is generally entitled some level of deference, given that the debtor filed in the proper venue. In the instant Involuntary Chapter 7 petition, the Debtor did not choose the venue or file a voluntary petition in another forum. The Court finds that this factor need not be considered because the Debtor did not file a voluntary bankruptcy petition in another forum.

**Conclusion**

For all of the foregoing reasons, the Court finds that this case was filed in an improper district pursuant to 28 U.S.C. §1408(1) and Fed. R. Bankr. P. 1014(a)(2) and transfer of this case to the venue of the District Court of the Virgin Islands Bankruptcy Division is the appropriate course of action under both for the convenience of the parties test and the interest of justice standard pursuant to 28 U.S.C. §1412.

It is Ordered that this Involuntary case pending in the United States Bankruptcy Court for the District of Puerto Rico be transferred to District Court of the Virgin Islands Bankruptcy Division. Although no opposition has been filed, the transfer is ordered without entry of order for relief. 11 U.S.C. §303(h). The related adversary proceeding (AP 22-00044) shall also be transferred to the District Court of the Virgin Islands Bankruptcy Division.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 25th day of October 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge